IN THE UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:18-CR-351 |
| | ) | |
| TETTEY LESLIE NII TETTEH, | ) | |
| | ) | |
| Defendant. | ) | |

FILED IN OPEN COURT
OCT - 2 2018
CLERK, U.S. DISTRICT
ALEXANDRIA, V

## STATEMENT OF FACTS

The parties stipulate that the allegations in Count One of the Information and the following facts are true and correct, and that had the matter gone to trial, the government would have proven them beyond a reasonable doubt:

1. The defendant, Tettey Leslie Nii Tetteh, is a citizen of the Republic of Ghana and has no lawful status in the United States. The defendant entered the United States on or about January 6, 2010. After a period of time residing in the country with status, the defendant was ordered removed from the United States on or about April 10, 2012.

2. From not later than February 2018 until around the end of May 2018, in the Eastern District of Virginia and elsewhere, the defendant did unlawfully and knowingly conspire with others, known and unknown, to unlawfully and knowingly conduct financial transactions affecting interstate and foreign commerce, involving the proceeds of a specified unlawful activity, namely, wire fraud and conspiracy to commit wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1349, knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the conspiracy to commit wire fraud and knowing that the property involved in the financial

transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(h) ("the Money Laundering Conspiracy").

## UNDERLYING WIRE FRAUD SCHEMES

3. At all times during the course of the Money Laundering Conspiracy, the defendant's coconspirators, including UCC-1, UCC-2, and others known and unknown, engaged in wire fraud and conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349 (the "Wire Fraud Schemes"). In particular, from no later than February 2018 through at least May 2018, these coconspirators conspired, devised and intended to devise at least two schemes to defraud victims, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

4. It was part of one fraudulent scheme that members of the conspiracy assumed the identity of U.S. persons, including U.S. military service members, and endeared themselves through online communications to lonely victims. Members of the conspiracy then convinced these victims, through false and deceitful stories, to send money to bank accounts controlled by coconspirators, including accounts controlled by the defendant, as detailed below.

5. It was part of another fraudulent scheme that members of the conspiracy assumed the identity of legitimate businesses and convinced victims, through fraud and deceit, to send money to bank accounts controlled by coconspirators, including accounts controlled by the defendant, as detailed below.

6. It was part of the Wire Fraud Schemes that members of the conspiracy caused signals to be transmitted by means of wire communication in interstate commerce, and did so for the purpose of executing these schemes.

## DEFENDANT'S LAUNDERING OF WIRE FRAUD SCHEME PROCEEDS

7. Sometime before February 2018, an individual known to the defendant ("UCC-1") suggested to the defendant that the defendant could make money by opening bank accounts using fake identities and shell companies, and using those accounts to process financial transactions for UCC-1 and others. UCC-1 provided instruction to the defendant on how to open bank accounts using fake identities and shell companies, and helped the defendant obtain a fraudulent Ghanaian passport to be used in furtherance of the scheme.

8. Sometime before February 2018, UCC-1 introduced the defendant to an associate who resided in Northern Virginia ("UCC-2"). The defendant and UCC-2 agreed that the defendant would open bank accounts using various fake identities and, at UCC-2's request, withdraw money that transferred into those accounts by victims of the Wire Fraud Schemes and coconspirators.

9. In or around February 2018, UCC-2 told the defendant that he would obtain a passport for the defendant to use to open bank accounts in Virginia and elsewhere and asked for a photograph of the defendant to use for the passport. The defendant provided UCC-2 with a picture of a friend from high school, rather than his own photograph, because he did not want to use his real face. UCC-2 thereafter provided the defendant with an altered passport from the Republic of Ghana bearing the name "Prince Fosu," and the picture provided by the defendant.

10. It was part of the Money Laundering Conspiracy that the defendant knowingly acquired at least four false, forged, counterfeited, mutilated, or altered passports. These passports included a Republic of Ghana passport in the name of "Daniel Hammond," a Republic of Ghana Passport in the name of "Leslie Tettey," a Kingdom of the Netherlands passport in the name of "Christopher Feaster," as well as the Republic of Ghana passport in the name of "Prince Fosu" discussed above. The "Hammond," "Feaster," and "Fosu" passports also contained forged,

counterfeited, altered, or falsely made U.S. nonimmigrant visas, which the defendant believed would make him more successful at using the documents to open bank accounts.

11. It was part of the Money Laundering Conspiracy that, sometime before February 2018, the defendant convinced his cousin in Ghana ("E.A.") to send his passport to the defendant. The defendant told E.A. he needed the passport to help E.A. apply for schools in the United States, when in fact the defendant intended to use the passport to open bank accounts.

12. It was part of the Money Laundering Conspiracy that, between in or around February 2018 and in or around May 2018, the defendant used these fake or assumed identities to create various registered business names, including "PrinceFos Investments," "Prince of Peace Cleaning," and "Skini Ventures." These shell companies conducted no real business.

13. It was part of the Money Laundering Conspiracy that the defendant used these fake or assumed identities and shell companies to open bank accounts at federally-chartered financial institutions in the Eastern District of Virginia, including Burke & Herbert Bank, Citi Bank, SunTrust Bank, TD Bank, United Bank, Wells Fargo, and Woodforest National Bank. The defendant's purpose in using the fake or assumed identities and shell companies to open these bank accounts was to conceal in whole or in part the nature, source, ownership, and control of the proceeds transferred into the accounts, *i.e.*, the proceeds of the Wire Fraud Schemes.

14. It was part of the Money Laundering Conspiracy that, after creating these bank accounts, the defendant unlawfully and knowingly conducted financial transactions involving the proceeds of the Wire Fraud Schemes. In particular, the defendant withdrew proceeds of the Wire Fraud Schemes from the bank accounts through various means, including cash and check. The defendant then provided these proceeds to individuals identified by the defendant's coconspirators, or otherwise disposed of the funds as directed by coconspirators.

15. At the time the defendant conducted these financial transactions, he knew that the property involved in the transactions represented the proceeds of the Wire Fraud Schemes.

16. At the time the defendant conducted these financial transactions, he knew that the transactions—conducted through bank accounts associated with fake or assumed identities—were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the Wire Fraud Schemes.

17. As part of the Money Laundering Conspiracy, the defendant withdrew and redistributed over $250,000 of proceeds from the Wire Fraud Schemes that had been deposited into bank accounts the defendant opened using fake or assumed identities and shell companies.

18. The defendant retained portions of the Wire Fraud Schemes' proceeds, or otherwise received remuneration, as payment for his role in the Money Laundering Conspiracy.

19. Below are two illustrative examples of the manner and means of the conspiracy:

*E.A. Identity and Associated Bank Transactions*

20. On or about February 26, 2018, the defendant opened an account at Sun Trust Bank, within the Eastern District of Virginia. The defendant used E.A's passport to open the account, which he opened under the name of a shell business, "Skini Ventures."

21. On or about March 27, 2018, M.S., a victim of the Wire Fraud Schemes, deposited $21,405 to the SunTrust Bank account.

22. On or about April 6, 2018, the defendant withdrew the balance of the account, which at the time was $28,001.37, and subsequently provided the money to coconspirators.

23. At the time the defendant conducted these financial transactions, he knew that the property involved in the transactions represented the proceeds of the Wire Fraud Schemes, and

that the transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the Wire Fraud Schemes.

*"Prince Fosu" Identity and Bank Transactions*

24. On or about March 30, 2018, the defendant opened an account at TD Bank, within the Eastern District of Virginia. The defendant used the "Prince Fosu" passport to open the account, which he opened under the name of a shell business, "PrinceFos Investment."

25. On or about April 16, 2018, P.D., a victim of the Wire Fraud Schemes, sent $42,000 to the TD Bank account.

26. In a series of transactions between on or about April 17, 2018, and on or about April 20, 2018, the defendant withdrew the money from the bank account and subsequently provided the money to co-conspirators.

27. At the time the defendant conducted these financial transactions, he knew that the property involved in the transactions represented the proceeds of the Wire Fraud Schemes, and that the transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the Wire Fraud Schemes.

28. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

29. The defendant acknowledges that the foregoing Statement of Facts does not describe all of the defendant's conduct relating to the offense charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities.

30. The defendant further acknowledges that he is obligated under his plea agreement to provide additional information about this case beyond that which is described in this Statement of Facts.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____

Alex Iftimie
Special Assistant United States Attorney (LT)
Tobias Tobler
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Tettey Leslie Nii Tetteh, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Tettey Leslie Nii Tetteh

I am counsel for Tettey Leslie Nii Tetteh. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Dontae L. Bugg, Esq.
Attorney for Tettey Leslie Nii Tetteh

8